UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARK WIGHTMAN, ET AL. | CIVIL ACTION |
| VERSUS | NO. 24-1748 |
| UNITEDHEALTH GROUP INCORPORATED, ET AL. | SECTION "R" |

## ORDER AND REASONS

Before the Court is defendants Dental Benefit Providers, Inc. (DBP), UnitedHealth Group Incorporated, United HealthCare Services, Inc., United HealthCare Service, LLC, and United HealthCare Insurance Company's (collectively, United)[1] motion to stay proceedings and compel arbitration.[2] Plaintiffs Wightman Family Dental, LLC, Dr. Mark Wightman, Dr. Courtney Wightman (collectively, Wightmans) oppose it.[3] For the following reasons, the Court grants this motion.

## I.  BACKGROUND

United is a health insurance carrier that is supported in its dental business by its wholly owned subsidiary DBP, a third-party subcontractor of

---

[1] R. Doc. 24.
[2] R. Doc. 14
[3] R. Doc. 20.

dental benefits.[4]  DBP handles tasks such as administering benefits, coordinating care, and processing claims.[5]  On December 18, 2008, the Wightmans entered into a Dental Provider Agreement with DBP to become a Preferred Provider Organization (PPO),[6] which allowed DBP to sell access to the Wightmans' practice to United for lower negotiated rates.[7]  In exchange for the reduced rates, dental practices in a PPO typically receive benefits such as patient steerage and exposure.[8]  The terms of this agreement (DBP/Wightman PPO) set a Fee Schedule to determine the discounted amount the practice would receive for the submitted claims.[9]  The provider agreement contained a binding arbitration clause, which stated in relevant part:

> DBP and the Practice will work together in good faith to resolve any disputes about their business relationship.  If the parties are unable to resolve the dispute within 30 days following the date one party sent written notice of the dispute to the other party, and if DBP or the Practice wishes to pursue the dispute, it shall be submitted to binding arbitration in accordance with the Commercial Dispute Procedures of the American Arbitration Association ("AAA"). In no event may arbitration be initiated more than one year following the sending of written notice of the dispute. . . . This Section 8 is intended to govern any dispute between DBP and the Practice regardless of whether the dispute

---

[4]  R. Doc. 2-1 at 2–3 ¶ 15, 6 ¶ 37.
[5]  *Id.* at 2–3 ¶ 15.
[6]  *Id.* at 8 ¶ 52; *see* R. Doc. 20-1.
[7]  R. Doc. 2-1 at 3 ¶ 18.
[8]  *Id.*
[9]  *Id.* at 8–9 ¶ 52.

arose before or after execution of this Agreement, and this Section 8 shall survive and govern any termination of this Agreement.[10]

. . .

[A]ny disputes that may arise between the parties relative to this Agreement shall be resolved exclusively between them pursuant to Section 8, Resolution of Disputes, of this Agreement.[11]

Plaintiffs allege that United improperly billed for their services using the DBP PPO network as a cover. They assert that United placed the United DBP PPO logo on United's insurance cards, indicating that those customers used the DBP PPO plan.[12] After the Wightmans provided care, United allegedly processed the claim incorrectly, applying a different PPO reimbursement rate under the United/MaximumCare PPO, to which the Wightmans were not a contracting party.[13] This allegedly resulted in United's underpaying the claims.[14]

Plaintiffs filed suit in state court for (1) breach of contract, (2) violation of Louisiana's standards for receipt and processing of claims under La. Rev. Stat. §§ 22:1832–33, (3) violation of Louisiana's laws governing PPOs under La. Rev. Stat. § 40:2203.1, (4) violation of Louisiana's unfair trade practices

---

[10]   R. Doc. 20-1 at 10–11.
[11]   *Id.* at 15.
[12]   R. Doc. 2-1 at 13 ¶ 72.
[13]   *Id.* at ¶ 75.
[14]   *Id.* at ¶ 76.

act under La. Rev. Stat. §§ 51:1404, *et seq.*, (5) negligent misrepresentation, fraud, and detrimental reliance, (6) tortious interference with the patient-physician contract or relationship, (7) unjust enrichment, and (8) all other appropriate equitable relief.[15]  Defendants removed the case to federal court.[16]

Defendants now seek to stay proceedings and compel arbitration.[17] They argue that plaintiffs' agreement with DBP contained a binding arbitration provision, that this dispute falls within the scope of the provision, and that equitable estoppel compels arbitration of plaintiffs' claims against United, even though United was not a signatory of the agreement.[18] Plaintiffs oppose this motion.[19]

The Court considers the motion below.

## II.  LEGAL STANDARD

There is a strong federal policy in favor of arbitration. *See Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011). "[A]ny doubts concerning the

---

15   *Id.* at 15–26 ¶¶ 88–186.
16   R. Doc. 2.
17   R. Doc. 14.
18   *Id.* at 2.
19   R. Doc. 20.

scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). "[A]rbitration should not be denied 'unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" Safer, 422 F.3d at 294 (citing *Personal Sec. & Safety Sys., Inc. v. Motorola, Inc.*, 297 F.3d 388, 392 (5th Cir. 2002)).

To determine whether to compel arbitration, the Court conducts a "two-step inquiry." *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007). "Th[e] Court must first ascertain whether the parties agreed to arbitrate the dispute," which requires determining "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" *Id.* (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). The Court then considers "whether any federal statute or policy renders the claims nonarbitrable." *JP Morgan Chase & Co.*, 492 F.3d at 598 (quoting *Washington Mut. Fin. v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004)).

## III.  DISCUSSION

### A. Validity

The DBP/Wightman PPO agreement is a valid, signed contract between the Wightmans and DBP.[20]  While plaintiffs dispute the validity of some of the documents defendants submitted with the contract,[21] the designated errors neither call into question the validity of the contract nor the validity of the arbitration clause.  Indeed, the contract that plaintiffs themselves submitted is executed and contains the same arbitration provision.  Further, the Wightmans expressly do not dispute the existence of the arbitration provision in the agreement.[22]  Therefore, the Court finds there is a valid arbitration agreement between DBP and the Wightmans.

### B. Scope

Having found that the arbitration agreement binds DBP and the Wightmans, the Court must next determine whether the current dispute is

---

[20]  R. Doc. 20-1 at 17.
[21]  R. Doc. 20 at 7–9 (stating that the documents that defendants submitted "contain[s a] differing signature page[]," "contains additional pages, some of which are not paginated, do[es] not contain consistent footnotes, appear[s] to [have] excerpts of an unspecified provider manual, and may have been extracted from another document and erroneously inserted into the contract documents submitted").
[22]  *Id.* at 9.

within its scope. "The question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the '*question of arbitrability,*' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (alteration in original) (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). The "question of arbitrability" is considered "a gateway dispute about whether the parties are bound by a given arbitration clause." *Id.* at 84.

Here, there is clear and unmistakable evidence that the parties intended to arbitrate the question of arbitrability. The provider agreement states that the arbitration must be conducted "in accordance with the Commercial Dispute Procedures of the American Arbitration Association ("AAA")." Rule 7 of the AAA Commercial Arbitration Rules states, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, Rule 7(a). Courts have consistently held that "the express adoption of [the AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *see also Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009); *Contec Corp. v. Remote Sol.*, Co., 398 F.3d 205, 208 (2d Cir. 2005); *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1246 (10th Cir. 2018); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005).

That some of the defendants are non-signatories does not preclude arbitrating arbitrability. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (clarifying that "whether the arbitration contract bound parties who did not sign the agreement" is a "question of arbitrability" (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–946 (1995)). Here, the delegation of arbitrability applies to United even though the contract was between DBP and the Wightmans. The Fifth Circuit dealt with a similar issue in *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 715 (5th Cir. 2017). There, the Fifth Circuit determined that the delegation of arbitrability applied to the claims against two non-signatory defendants. The court reasoned that because the signatory plaintiff was the

party seeking to avoid arbitration, because the plaintiff's signatory status indicated its "expectations and intent when binding itself" to the agreement, and because the agreement delegated arbitrability, the matter was properly delegated to arbitrators. 866 F.3d at 715 (quoting *Contec Corp.*, 398 F.3d at 211). Those facts are present here. Plaintiff is a signatory and is the party seeking to avoid arbitration, and the agreement delegates arbitrability. Therefore, it is not improper to bind plaintiffs to the agreement's delegation clause even though non-signatory defendants are seeking to enforce the arbitration agreement. Having found a valid agreement to arbitrate and that the arbitrator must decide whether the issues between the parties are arbitrable, the Court concludes that the parties agreed to arbitrate the dispute.

      The Court must also determine whether any policies or federal statutes render the claims non-arbitrable. The Court has not any identified any such statutes or policies. The dispute is not made non-arbitrable simply because there are statutory claims involved. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 638 (1985) ("[S]o long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the [antitrust] statute will continue to serve both its remedial and deterrent function. . . . [The courts] will have the opportunity

at the award-enforcement stage to ensure that the legitimate interest in the enforcement of the antitrust laws has been addressed."). The Court finds that the *JP Morgan Chase* test for whether to compel arbitration is satisfied. *See* 492 F.3d at 598.

**C. Waiver**

Plaintiffs argue that defendants waived arbitration because the defendants did not initiate arbitration within a year after receiving notice, as required under the terms of the agreement,[23] but this issue too is referred to arbitration. Procedural questions of arbitrability, "such as *time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate . . . are for the arbitrators to decide." *Howsam*, 537 U.S. at 85 (emphasis in original) (citations omitted). "[T]he presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or the like defense to arbitrability." *Id.* at 84 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983)). In rare circumstances, "a court will not order arbitration if 'no rational mind' could question that the parties

---

[23]   The arbitration provision in the DBP/Wightman PPO agreement stated, "In no event may arbitration be initiated more than one year following the sending of written notice of the dispute." R. Doc. 20-1 at 10.

intended for a procedural provision to preclude arbitration and that the breach of the procedural requirement was clear." *Id.* (quoting *Chevron Chem. Co.*, 815 F.2d at 342.).

The rare exception does not apply here. The Wightmans claim that they provided notice and were in contact with United as early as April 2018,[24] and accordingly defendants should be barred from initiating arbitration more than a year following that notice. But defendants challenge the adequacy of plaintiff's notice under the agreement's definition of "notice."[25] Indeed, the section on arbitration requires "sending written notice of the dispute" to start the one-year timer,[26] and the contract states that "[a]ny notice required to be given pursuant to the terms and provisions hereof shall be sent by U.S. Mail to each party at the address set forth on the signature page."[27] Plaintiffs do not claim to have given notice by mail to DBP's listed address. Because a rational mind could conclude that plaintiffs did not satisfy the notice requirement under the agreement's terms, the Court will not bar arbitration and will leave the procedural issue of waiver to the arbitrator.

---

[24]    R. Doc. 20 at 19.
[25]    *See* R. Doc. 20-1 at 15; R. Doc. 22 at 7.
[26]    R. Doc. 20-1 at 10.
[27]    *Id.* at 15.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for to stay proceedings and compel arbitration. Accordingly, this matter is stayed and administratively closed pending resolution of any arbitration proceeding. Plaintiffs' motion to strike certain arguments and evidence in defendants' reply[28] is dismissed as MOOT.

New Orleans, Louisiana, this __13th__ day of November, 2024.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[28] R. Doc. 26.